UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Ashley Donna, | Court File No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |
| Becton, Dickinson and Company, | |
| Defendant. | |

_____

Plaintiff Ashley Donna, by her attorneys, Nichols Kaster, PLLP, brings this action for damages and other relief, stating the following as her claims against Defendant Becton, Dickinson and Company:

## PARTIES

1. Plaintiff Ashley Donna is a woman who resides in Victoria, Minnesota.

2. Defendant Becton, Dickinson and Company ("Defendant" or "BD") is a medical technology company incorporated under the laws of the State of New Jersey. BD maintains its principal executive office at 1 Becton Drive, Franklin Lakes, New Jersey. BD employs sales representatives and other employees nationwide, including in the State of Minnesota.

3. During all relevant times, BD employed more than 15 employees.

## JURISDICTION AND VENUE

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. The Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein because this

action asserts claims arising under federal law: the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claim under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01, *et seq.*

6. Venue is proper in the District of Minnesota because Defendant conducts business in the State of Minnesota, and a substantial part of the events and omissions giving rise to the claims described herein occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

7. Defendant is a medical technology company engaged in the development, manufacture and sale of medical supplies, devices, laboratory equipment and diagnostic products.

8. Plaintiff commenced her employment with Defendant as a Territory Manager II in Defendant's Interventional Oncology Division in or around January 2018.

9. At all relevant times, Plaintiff was employed by Defendant in the State of Minnesota.

10. Plaintiff's sales territory included Minnesota, North Dakota, and South Dakota, which was part of Defendant's Great Lakes Region.

11. As a Territory Manager, Plaintiff's primary responsibilities included, but were not limited to, customer support, account management, and sales growth. Plaintiff

was responsible for meeting and/or exceeding Defendant's sales plan profitability for her territory by initiating strategies to capitalize on and create opportunities for sales and growth with existing and new clients within her territory.

12. Plaintiff last reported to Brian Gadowski, District Manager, who was based in Milwaukee, Wisconsin.

13. During Plaintiff's employment with Defendant, she received positive performance reviews.

14. Plaintiff exceeded her sales quota in 2019.

15. Plaintiff participated in Defendant's 12-month commissions plan with a rolling monthly payment plan. Once Plaintiff achieved requisite targets to demonstrate that she was "on track" to exceed her annual sales quota, Defendant would pay Plaintiff commissions on a monthly basis, with payments equal to $4,000 in commissions for every $20,000 in sales she brought in to Defendant as revenue.

16. On or about January 14, 2019, Defendant negotiated a new core needle contract with Premier Group Purchase Organization ("Premier") that reduced the account prices in Plaintiff's territory by approximately sixty (60) percent.

17. By January 2019, Plaintiff was on track to exceed her annual sales quota and had expected to receive commissions on her sales, including commissions on those accounts affected by Defendant's new Premier contract.

18. Prior to the Premier contract change, Plaintiff was among the top sales representatives in her Division.

19. Plaintiff's supervisor, Mr. Gadowski, told Plaintiff that he recognized that she would experience a significant loss of revenue in her territory due to Defendant's new contract with Premier.

20. Until Defendant's fiscal year ended in September 2019, Defendant and Plaintiff would be not be able calculate the total revenue loss experienced in Plaintiff's territory as a result of the new contract with Premier.

21. Mr. Gadowski assured Plaintiff that Defendant would pay her the value of her lost commissions (which was otherwise equal to $4,000 in commissions for every $20,000 in sales brought in as revenue) based on the total revenue loss experienced in her territory as a result of the new contract with Premier.

22. On a number of occasions between February and May 2019, Mr. Gadowski told Plaintiff that Defendant would adjust Plaintiff's commissions payment to compensate Plaintiff for her lost commissions based on the total revenue loss experienced in her territory as a result of the new contract with Premier.

23. Mr. Gadowski told Plaintiff that he had discussed this payment for Plaintiff's lost commissions with, and received approval from, his supervisor, National Sales Manager Maria Kebe.

24. Plaintiff learned from other sales employees that Mr. Gadowski had informed them that Plaintiff would be compensated for her lost commissions due to the Premier contract change.

25. On multiple occasions between February and May 2019, Plaintiff asked Mr. Gadowski if she could reach out to Robert Collins, Vice President of the Interventional

Oncology Division, to discuss the payment for Plaintiff's lost commissions and confirm when she could expect to receive the payment. Each time, Mr. Gadowski responded that Plaintiff would be breaking the chain of command and discouraged her from reaching out to Mr. Collins.

26. In May 2019, Plaintiff gave birth to twins.

27. Following the birth of her children, Plaintiff took maternity leave under the Family Medical Leave Act ("FMLA leave") between May 7, 2019 and August 12, 2019.

28. On or about August 13, 2019, Plaintiff returned to work from her FMLA leave.

29. That same day, during a telephone call with Mr. Gadowski, Plaintiff asked when she would receive the compensation for her lost commissions as a result of the Premier contract change. In response, Mr. Gadowski stated that he did not think Plaintiff would receive the commissions compensation because she just took a three-month maternity leave.

30. Plaintiff notified Mr. Gadowski that her job and compensation should not be affected in any way because she had taken leave.

31. Following Plaintiff's telephone call with Mr. Gadowski, Plaintiff called two of her colleagues to inform them about Mr. Gadowski's statement and stated that she believed she was being treated differently by the company due to her recent pregnancy and FMLA leave.

32. Approximately one week later, on or about August 20, 2019, Mr. Gadowski traveled to Minnesota to accompany Plaintiff on her first field ride since her return from

maternity leave. When Plaintiff and Mr. Gadowski were in the car traveling between accounts, Plaintiff asked Mr. Gadowski about the compensation for her lost commissions due to the Premier contract change and when she could expect to receive the compensation.

33. In response, Mr. Gadowski notified Plaintiff that Defendant was no longer going to pay her for her lost commission compensation related to the Premier contract change.

34. When Plaintiff became upset and stated that taking maternity leave was not a reason to deny her compensation that she had been told she would receive prior to taking leave, Mr. Gadowski changed the reason he had previously given Plaintiff on or about August 13, 2019, and stated that the reason Plaintiff would not be receiving compensation for her lost commissions was that Defendant did not do "one-off exceptions" for individual employees. Mr. Gadowski told Plaintiff that adjustments to compensation are only made when a contract change affects an entire division.

35. During the conversation with Mr. Gadowski on or about August 20, 2019, Plaintiff had been driving the car and became so distraught that Mr. Gadowski instructed Plaintiff to pull the car over and told her that they would end the workday early.

36. Defendant's fiscal year ended in September 2019.

37. Mr. Gadowski notified Plaintiff that based on his calculations, the total loss in revenue for Plaintiff's territory due to Defendant's new contract with Premier was approximately $250,000.

38. A $250,000 loss in sales revenue for Plaintiff's territory resulted in a direct loss of $50,000 in commissions to Plaintiff.

39. On or about November 6, 2019, Plaintiff spoke with Mr. Collins who confirmed that Plaintiff would not receive any compensation for the Premier contract change and stated that it was because Defendant does not do "one-off exceptions."

40. Mr. Collins told Plaintiff that compensation adjustments were not made unless a change in sales contract affects an entire division, not just one employee.

41. Upon information and belief, Defendant has permitted "one-off exceptions" in the past to adjust an individual territory manager's compensation after a change in contract or customer activity beyond the territory manager's control negatively affected the territory manager's compensation.

42. On or about November 5, 2019, Plaintiff met with Defendant's Human Resources Representative, Shannon Snits.

43. Plaintiff notified Ms. Snits that she believed she had been discriminated against for taking FMLA leave following the birth of her children when Defendant denied her approximately $50,000 in compensation for lost commissions relating to the Premier contract change upon her return from leave.

44. During Plaintiff's conversation with Ms. Snits, Ms. Snits confirmed that that one-off exceptions to adjust an employee's compensation are made "all of the time."

45. Ms. Snits told Plaintiff that she was part of an internal committee that specifically considers compensation adjustments but had never heard of any discussion

concerning a potential adjustment to Plaintiff's compensation for lost commissions due to the Premier contract change.

46. Plaintiff separated from employment with Defendant on or about November 15, 2019.

47. Plaintiff is aware of other female employees who have separated from the company due to disparate treatment due to sex and/or pregnancy discrimination, as well as discrimination and retaliation for taking FMLA leave.

48. When Plaintiff first began her employment with Defendant, Defendant's Interventional Oncology Division was frequently referred to as a "boy's club."

49. Mr. Gadowksi told Plaintiff that he was trying to change his team in the Interventional Oncology Division from having a "boy's club image," and that the team had recently made its first female hire.

50. A number of employees made comments to Plaintiff to the effect of, "I can't believe Mr. Gadowski hired a female employee."

51. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 6, 2020.

52. The EEOC issued Plaintiff her Notice of Right to Sue on or about February 11, 2020.

## CAUSES OF ACTION

### COUNT I

**Interference with Rights in Violation of the
Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*.
(FMLA Discrimination)**

53. Plaintiff incorporates the foregoing paragraphs by reference.

54. At all relevant times, Plaintiff was an eligible employee of Defendant under the FMLA. 29 U.S.C. § 2611(2).

55. At all relevant times, Defendant was a covered employer under the FMLA. 29 U.S.C. § 2611(4)(A).

56. Section 2612 of the FMLA permits an employee to take up to twelve weeks of leave each twelve-month cycle because of the birth of a son or daughter of the employee and in order to care for such son or daughter. 29 U.S.C. § 2612(a)(1)(A).

57. Section 2615 of the FMLA forbids employers from interfering with, discriminating and/or retaliating against employees for having exercised their rights under the FMLA. 29 U.S.C. § 2615(a)(1)-(2); 29 CFR § 825.220(c).

58. Plaintiff took FMLA leave because of the birth of her children and in order to care for her children following birth.

59. Defendant discriminated against Plaintiff for exercising her rights under the FMLA to take protected leave by, among other ways, denying Plaintiff compensation for her lost commissions due to the Premier contract change because she took FMLA leave for the birth of her children.

60. Defendant's conduct described herein constitutes unlawful discrimination and/or retaliation in violation of 29 U.S.C. § 2615.

61. Defendant's violations of 29 U.S.C. § 2615 were not in good faith, and Defendant did not have reasonable grounds for believing that its conduct did not violate 29 U.S.C. § 2615. Plaintiff is thus entitled to liquidated damages in amount equal to her damages. 29 U.S.C.A. § 2617.

62. As a result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, past and present loss of income, lost benefits, out-of-pocket damages, and other equitable damages, all in an amount in excess of $75,000. Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this claim. Plaintiff is entitled to full relief under the FMLA.

## COUNT II

### Sex Discrimination in Violation of
### Title VII of the Civil Rights Act, 42 U.S.C. § 2000e

63. Plaintiff incorporates the foregoing paragraphs by reference.

64. Plaintiff is an "employee" under Title VII of the Civil Rights Act ("Title VII"). 42 U.S.C. § 2000e(f).

65. Defendant is an "employer" under Title VII. 42 U.S.C. § 2000e(b).

66. Title VII provides that it is "an unlawful employment practice for an employer to . . . otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

67. Section 2000e of Title VII defines "because of sex" to include, pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e.

68. Defendant discriminated against Plaintiff on the basis of her pregnancy and/or childbirth, by, among other ways, denying Plaintiff compensation for her lost commissions due to the Premier contract change after she gave birth to her children.

69. By engaging in the conduct described herein, Defendant willfully and in bad faith violated Title VII. Because Defendant committed the foregoing acts with malice or reckless indifference to Plaintiff's federally protected rights, she is entitled to punitive damages.

70. As a result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, past, present and future loss of income, lost benefits, out-of-pocket damages, mental anguish, emotional distress, physical manifestations of emotional distress, humiliation, embarrassment, loss of reputation, other pain and suffering, and other equitable damages, all in an amount in excess of $75,000. Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this claim. Plaintiff is entitled to full relief under Title VII.

## COUNT III

**Sex Discrimination in Violation of the
Minnesota Human Rights Act
Minn. Stat. § 363A.01, *et seq*.**

71. Plaintiff incorporates the foregoing paragraphs by reference.

72. Defendant is an "employer" under the Minnesota Human Rights Act ("MHRA"). Minn. Stat. § 363A.03, subd. 16.

73. Plaintiff is an "employee" under the MHRA. Minn. Stat. § 363A.03, subd. 15.

74. Under Section 363A.08 of the MHRA, "it is an unfair employment practice for an employer . . . because of . . . sex . . . to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn. Stat. § 363A.08, subd. 2.

75. The MHRA defines "sex" to include, but not be limited to, pregnancy, childbirth, and disabilities related to pregnancy or childbirth. Minn. Stat. § 363A.03, subd. 42.

76. Defendant discriminated against Plaintiff on the basis of her pregnancy and/or childbirth, by, among other ways, denying Plaintiff compensation for her lost commissions due to the Premier contract change after she gave birth to her children.

77. As a result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, past, present and future loss of income, lost benefits, out-of-pocket damages, mental anguish, emotional distress, physical manifestations of emotional distress, humiliation, embarrassment, loss of reputation, other pain and suffering and other equitable damages, all in an amount in excess of $75,000. Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim, as well as punitive damages and trebled damages. Plaintiff is entitled to full relief under the MHRA.

## DEMAND FOR JURY TRIAL

Plaintiff Ashley Donna hereby requests trial by jury Rule 38(b) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ashley Donna requests that the Court issue judgment against Defendant, as follows:

A. For an Order adjudging the practices and conduct of Defendant complained of herein to be in violation of the rights guaranteed to Plaintiff under the FMLA;

B. For an Order adjudging the practices and conduct of Defendant complained of herein to be in violation of the rights guaranteed to Plaintiff under Title VII of the Civil Rights Act of 1964;

C. For an Order adjudging the practices and conduct of Defendant complained of herein to be in violation of the rights guaranteed to Plaintiff under the MHRA;

D. All relief recoverable under the FMLA, Title VII, and MHRA, including, but not limited to, back pay, front pay, lost benefits, compensatory damages for future pecuniary loss, emotional distress, physical manifestations of emotional distress, humiliation, embarrassment, loss of reputation, mental anguish, inconvenience, civil penalties, and interest, all in an amount in excess of $75,000;

E. For an award of punitive damages under Title VII and the MHRA, in an amount to be determined at trial;

F. For treble damages and a civil penalty as provided by the MHRA;

G. For liquidated damages as provided by the FMLA;

H. For an award to Plaintiff of her attorneys' fees, disbursements, and the costs of this action as available at law or in equity;

I. For an award of interest on Plaintiff's damages;

J.      For all such other and further relief available by statute; and

K.      For such other and further relief as the Court deems just and equitable.

Dated: April 23, 2020            **NICHOLS KASTER, PLLP**

s/Michelle L. Kornblit
Steven Andrew Smith, #260836
smith@nka.com
Michelle L. Kornblit, #0397778
mkornblit@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 256-3200
Fax: (612) 338-4878

**ATTORNEYS FOR PLAINTIFF**